```
                UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF MASSACHUSETTS


KFC CORPORATION,                    )
A&W RESTAURANTS, INC., and          )
LONG JOHN SILVER'S, INC.,           )
        Plaintiffs                  )
                                    )
                v.                  )  C.A. NO. 09-cv-30002-MAP
                                    )
SPRINGFIELD FOOD SYSTEM, INC.,      )
L AND L FOOD SERVICE, INC.,         )
JESSE M. LANIER, and                )
BARBARA M. LANIER,                  )
        Defendants                  )
```

            MEMORANDUM AND ORDER RE:
         PLAINTIFF'S MOTION TO LIFT STAY
        AND ENTER AGREEMENT FOR JUDGMENT
                  (Dkt. No. 28)

                 February 14, 2011

PONSOR, D.J.

                   I. INTRODUCTION

    Plaintiffs are three Delaware corporations with principal places of business in Kentucky; they operate chain restaurants, including Kentucky Fried Chicken, A&W, and Long John Silver's. Defendants, who are franchisees, operate seven of the these chain restaurants in Massachusetts and Connecticut. In 2008, Plaintiffs filed a complaint against Defendants alleging breach of contract and seeking declaratory judgment regarding the status of the parties' franchise agreements.

    The parties stayed the proceedings in November 2009

when they entered into a settlement agreement ("Agreement") whereby Plaintiffs granted Defendants an opportunity to sell their franchises by March 30, 2011, after which Defendants' ownership of the franchises would terminate. This period of time was called the "Reinstatement Period." The Agreement provided that any failure on the part of Defendants to comply strictly with Plaintiffs' monetary covenants and operational standards during the Reinstatement Period would result in a default of the Agreement. The Agreement provided further that, upon default, Plaintiffs could request the court to lift the stay and enter an Agreement for Judgment, signed by both parties, which would effectively terminate the parties' franchise agreements. (Dkt. No. 28, Ex. A.)

Under the Agreement, Defendants could default in a variety of ways. (Dkt. No. 28, Ex. 4, ¶ 3(j)(I)-(VI).) Relevant to this proceeding is the provision concerning operations defaults, which stated that default shall result if "[a]ny of the KFC Restaurants receives a failing rating under any food standards consultations (or equivalent rating under any successor program)." (Id. ¶ 3(j)(II).) Default would not automatically lead to breach of the Agreement because certain curative rights were available to Defendants:

> With respect to Operations Defaults, KFC shall
> provide Defendant Jesse Lanier with written notice
> of default and Defendant shall have ten (10) days
> from the date of the notice to cure the default.
> PROVIDED, HOWEVER, that KFC shall not be obligated
> to give more than one (1) such notice during any
> 120 day period during the Reinstatement Period.

(Dkt. No. 28, Ex. 4, ¶ 4(b) ("curative provision")).

In March 2010, Plaintiffs filed a motion alleging that Defendants had defaulted on the Agreement by violating Plaintiffs' operational standards as determined by Plaintiffs' Food Standards Consultation ("FSC") inspectors. Defendants opposed the motion on the grounds that the inspections were overly and unexpectedly stringent; that they disagreed with many of the FSC findings; and that they had complied with the curative measures available to them pursuant to the Agreement. In essence, Defendants contended that Plaintiffs unfairly enforced technical violations in order to trigger the default provisions of the Agreement.

Although neither party frames the issue as such, the court is being called upon to determine whether Defendants breached the Agreement. For the reasons set forth below, the court will determine that Defendants did not breach it, and, therefore, will deny Plaintiffs' motion to lift the stay at this time.[1]

---

[1] Plaintiffs have recently filed an Emergency Motion to Lift Stay (Dkt. 54), which the court will be setting for hearing.

## II. FACTS

The parties' statements of facts regarding the FSC inspections, if not identical, are similar and are taken from their memoranda.[2] (Dkt. Nos. 28, 29.) On December 3, 2009, Defendants' Shaker Road franchise was cited for deficiencies with regard to food temperature. During a subsequent inspection on December 27, 2009, the food temperature issues were found to have been cured, but Defendants were cited for deficiency regarding the temperature of the running hot water. Defendants installed a new hot water heater at the cost of $3400.00, and a re-inspection on February 5, 2009, reported that the hot water issues were resolved. During this inspection, however, the inspector cited Defendants for failure to follow proper handwashing procedures.[3] On February 25, 2010, Plaintiffs sent Defendants a notice of termination of the Agreement, and on March 4 re-commenced this litigation.

## III. DISCUSSION

The dispute centers on the interpretation of the

---

[2] Neither party provided the inspection reports that form the basis of this proceeding. Curiously, Plaintiffs provided reports from ten inspections, all of which were conducted in 2008, and, accordingly, are irrelevant to a determination as to whether Defendants defaulted after they entered into the Agreement in November 2009.

[3] Defendants disputed this finding and appealed it unsuccessfully to the FSC.

Agreement, specifically whether successive violations of different operational standards -- for example, a violation of a food temperature requirement followed by a violation of handwashing procedures –- constitute default of the Agreement if Defendants cure each of them. Plaintiffs state that the provision that "KFC shall not be obligated to give more than one (1) such notice" applies to all defaults, whereas Defendants state that the provision applies to each specific default. Because Defendants undisputedly defaulted numerous times, the meaning of this provision is dispositive of whether they breached the Agreement.

"[S]ettlement agreements are a type of contract and therefore are governed by contract law." Island Creek Coal Co. v. Wells, 113 S.W.3d 100, 103 (Ky. 2003) (citations omitted).[4] "[M]atters of contract interpretation are well within the court's expertise." Simpson County Water Dist. v. City of Franklin, 872 S.W.2d 460, 464 (Ky. Ct. App. 1994). It is well settled that "any contract or agreement must be construed as a whole, giving effect to all parts and every word in it if possible." Cantrell Supply, Inc. v. Liberty Mut. Ins. Co., 94 S.W.3d 381, 384-85 (Ky. App. Ct. 2002). With this in mind, the court is persuaded that the

---

[4] The Agreement provides for interpretation according to the laws of the Commonwealth of Kentucky. (Dkt. No. 28, Ex. 4, ¶ 14.)

provision at issue applies to each alleged default individually.

The curative provision requires Plaintiffs to provide Defendants "with written notice of default" and grants Defendants "ten (10) days from the date of the notice to cure <u>the default</u>." (Dkt. No. 28, Ex. 4, ¶ 4(b) (emphasis added).) The next clause, "PROVIDED, HOWEVER, that KFC shall not be obligated to give more than one (1) <u>such</u> notice during any 120 day period," clearly applies to the written notice given Defendants regarding "<u>the default</u>." The "such" modifies "notice" to explain that "notice" refers to the specific default that Defendants have ten days to cure. Application of the phrase to any default and not just to the specific default would render the "such" meaningless because, in fact, Plaintiffs would have no obligation ever to send more than "one notice." This "construction of the contract is the only one consistent with all of its terms and with the purpose which the parties apparently sought to serve." <u>Davis v. Parker</u>, 255 S.W. 836, 850 (Ky. App. Ct. 1923). <u>See also</u> <u>Elkhorn Star Coal Co. v. Hall</u>, 300 S.W. 864, 866 (Ky. App. Ct. 1927) ("To read words out of a written contract is simply to disregard the writing which the parties executed as the final evidence of the contract.").

Furthermore, the phrase "PROVIDED, HOWEVER" ensures that Defendants have the opportunity to cure a particular default only once in any 120-day period.  Thus, it is clear that no curative rights are available for subsequent violations of already-noticed defaults.  On the other hand, committing a new unique default will not result in the drastic consequence, as Plaintiffs' interpretation would allow, of the termination of Defendants' seventeen-year franchise business over a single violation.[5]

For the foregoing reasons, the court finds that the Agreement did not contemplate successive violations of the same operational standard but did contemplate multiple violations and subsequent cures of distinct operational standards.  Accordingly, Defendants did not breach the Agreement.

## III. CONCLUSION

---

[5] On December 6, 2010, the court allowed Plaintiffs' Motion for Leave to Supplement the Record (Dkt. No. 50) with new, and different, allegations of additional breaches of the Agreement. According to the supplementary Declaration, these alleged breaches arose from Defendants' refusal to allow inspectors to enter two of their restaurants. The supplementation contained no detailed discussion of the circumstances of the breaches and no indication whether the resulting issuance of the termination letters mooted this litigation. Moreover, the court has received no response to the supplementation from Defendants. For this reason, the court has not considered these supplemental allegations in rendering this decision. They may be considered along with the Emergency Motion to Lift Stay and Enter Agreement (Dkt. 54), which Plaintiffs filed under seal on February 11, 2011.

Plaintiffs' Motion to Lift Stay and Enter Agreement for Judgment (Dkt. No. 28) is hereby DENIED. As noted above at n. 1, the court will set Plaintiffs' renewed Emergency Motion to Lift Stay (Dkt. 54) for a prompt hearing.

It is So Ordered.

<u>/s/ Michael A. Ponsor</u>
MICHAEL A. PONSOR
U. S. District Judge